UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIE A. K., Jr.,[1]

                             Plaintiff,              **DECISION AND ORDER**

v.                                                             1:22-cv-474-JJM

COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.
_____

Plaintiff brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that he was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [7, 8].[2] The parties have consented to my jurisdiction [12]. Having reviewed their submissions [7, 8, 9], this action is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

## BACKGROUND

The parties' familiarity with the 584-page administrative record [6] is presumed. On September 25, 2019, plaintiff filed application for supplemental security income ("SSI") benefits, alleging an onset date of June 2, 2010. Administrative Record [6] at 24. Plaintiff

---

[1] In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2] Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

complained of anxiety, depression, and a learning disorder. Id. at 213. Plaintiff's claim was initially denied. Id. at 115.

A.     **The Hearing**

Administrative Law Judge ("ALJ") Andrew J. Soltes, Jr. conducted a telephone hearing on January 26, 2021. Id. at 39-74. Plaintiff was represented by an attorney. Id. at 41. At the hearing, plaintiff testified that he was currently residing at a "rooming house" with approximately 15 other residents. Id. at 49-50. He last worked in 2000. Id. at 51. In 2018, he violated his parole and was sentenced to 14 months in prison. Id. at 51-52. He completed 11th grade. Id. at 54. He was in special education classes at school. Id. at 55. He testified that it was hard for him to work around people. Id. at 55. He would get nervous around "a lot of" people, concerned that they will think he will do an unsatisfactory job. Id. at 55-56. He had a problem with anger. Id. at 56. He would get angry when others would tell him to do something or that he was doing something wrong. Id. He was on antidepressants. Id. at 60. He got along with the people he lived with and was able to ride the bus with others, though he kept to himself. Id. at 56-57. He would take the bus with his grandmother every couple of weeks to go shopping. Id. at 53-54. He attended therapy five days a week. Id. at 57-58. He would take care of his room and personal hygiene. Id. at 63-64. He would watch TV and read books. Id. at 64.

A vocational expert testified that an individual with no exertional limitations, but limited to unskilled, low stress occupations defined as simple routine tasks, basic work-related decisions, rare changes in the workplace setting, no interaction with the public and occasional interaction with coworkers and supervisors, would be able to perform jobs in the national economy such as hand packager, housekeeper, and laundry worker. Id. at 69-70. She testified that if the individual required occasional redirection during the day, was off task for more than

10% of the time, or was absent more than once per month, that person would be precluded from full-time competitive work. Id. at 70-72.

**B.      The Medical Evidence**

In formulating the RFC, ALJ Soltes considered plaintiff's testimony, his medical history, and the medical opinions of record, which included an opinion from consultative examiner Toula Georgiou, PsyD., and from disability determination services ("DDS") medical consultants. Id. at 29-32.

Dr. Georgiou examined plaintiff in December 2019, during which plaintiff reported poor sleep, depressive symptoms, dysphoric moods, crying spells, fatigue, agitation, loss of interest, loss of pleasure, irritability, and social withdrawal. Id. at 394. Plaintiff also endorsed manic symptoms of worry, restlessness, difficulty concentrating, distractibility, agitation, racing thoughts, but also increased goal-directed activities and becoming more talkative at times. Id. Plaintiff's medical history included diagnoses for bipolar disorder and pedophilia. Id. Plaintiff was incarcerated in 2007 and 2012, both times for rape. Id. at 395. Plaintiff was in sex offender treatment as well as individual therapy. Id. 394.

Upon mental status examination, Dr. Georgiou assessed plaintiff with normal grooming and posture, clear and coherent speech and thought process, full range affect, neutral mood, clear sensorium, and was fully oriented. Id. at 395. His attention and concentration, as well as memory were mildly impaired. Id. His cognitive functioning was average to below average. Id. His insight was fair, and his judgment was fair to poor. Id. He was able to dress, bathe, groom, cook, clean, do laundry, and manage money. Id. at 395-96. He did not drive, and his relationship with his family was strained due to his temper. Id.

Dr. Georgiou opined that the plaintiff could understand, remember and apply simple directions and instructions. Id. at 396. He assessed plaintiff with mild to moderate difficulties with complex directions and instructions due to learning difficulties; difficulty interacting with others appropriately; and mild to moderate difficulties with pace and sustained concentration. Id. He opined that plaintiff "may have" difficulties with regular attendance at work. Id. He opined that plaintiff "seems to have ongoing marked difficulties regulating his emotions, controlling his behavior and maintaining his temper". Id. He opined that the "[r]esults of the present evaluation appear to be consistent with psychiatric difficulties that may significantly interfere with [plaintiff's] ability to function on a daily basis". Id.

ALJ Soltes found Dr. Georgiou's opinion "somewhat persuasive", citing that it was based on a direct examination of plaintiff, supported by his findings, and that Dr. Georgiou was familiar with SSA policies and requirements. Id. at 32.

DDS mental consultants L. Dekeon, PhD, and J. May, PhD, reviewed plaintiff's records and the consultative exam and assessed his mental impairments as "non-severe". Id. at 100-01, 112-13. ALJ Soltes found these opinions not persuasive, finding them inconsistent with the overall record, which he concluded demonstrated that plaintiff's impairments limited his mental functioning ability. Id. at 32.

C.  **The ALJ's Decision**

On April 28, 2021, ALJ Soltes issued a Notice of Decision denying plaintiff's claim. Id. at 24-34. He found that plaintiff had the severe impairments of anxiety disorder; depressive disorder; bipolar disorder; and learning disorder. Id. at 26. He assessed plaintiff with moderate limitations in the ability to understand, remember, or apply information, to interact with others, to concentrate, persist or maintain pace, and to adapt or manage oneself. Id. at 27.

ALJ Soltes based these assessments on plaintiff's statements, his interactions with healthcare providers, his activities of daily living, and cognitive assessments of plaintiff. Id.

ALJ Soltes determined that plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but that would be limited to "unskilled low stress occupations", which he defined to include simple routine tasks; basic work-related decisions; rare changes in the workplace setting; no interaction with the public, and occasional interaction with co-workers and supervisors. Id. at 29.

ALJ Soltes found that plaintiff had no past relevant work, but that he could perform various jobs that exist in significant numbers in the national economy. Id. at 32-34. Accordingly, he found that plaintiff was not disabled. Id. at 34.

## ANALYSIS

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022) ("[a]lthough . . . the evidentiary threshold for the substantial evidence standard 'is not high,' . . . the substantial evidence standard is also not merely

hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations").

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. See Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.      Res Judicata does not apply to plaintiff's application.**

Plaintiff argues that ALJ Soltes failed to apply the doctrines of res judicata and/or collateral estoppel, as plaintiff was previously found disabled by SSA in January 2012. [7-1] at 10-12 (*citing* Notice of Decision - Fully Favorable [6] at 85-93). Plaintiff's benefits were later discontinued due to his incarceration. Id. at 11. ALJ Soltes makes no mention of this previous determination in his decision. [6] at 24-34. The Commissioner responds that plaintiff's argument is expressly contradicted by the applicable law, which requires such a person to make a new application for benefits. [8-1] at 12-14. I agree with the Commissioner.

I have recently written on this issue, and I will not extensively restate my ruling here. See Maurice Johnson B. v. Commissioner of Social Security, 2024 WL 4273350, *2 (W.D.N.Y. 2024). Under the relevant law, SSI payments are suspended upon the recipient becoming incarcerated, and are terminated after 12 months of continuous suspension. *See* 42 U.S.C. §1382(e)(1)(A) ("no person shall be an eligible individual . . . with respect to any month if throughout such month he is an inmate of a public institution"); 20 C.F.R. §§416.1325 ("such ineligibility continues for so long as such individual remains a resident of a public institution"), 416.1335 ("[w]e will terminate your eligibility for benefits following 12 consecutive months of benefit suspension for any reason").

After such a termination of benefits, the Social Security Act dictates that an individual wishing to reinstate them must reapply and meet the requirements for disability:

> "[A]ny individual who - (A) was an eligible individual . . . and (B) who, after such eligibility, is ineligible for benefits . . . for a period of 12 consecutive months . . . may not thereafter become eligible for benefits . . . until the individual has reapplied for benefits under section 1382 of this title and been determined to be eligible for benefits."

42 U.S.C. §1383(j)(1). It is noteworthy that Congress called for a new application and determination to be made regarding eligibility, as opposed to allowing a mere "request for reinstatement of eligibility" as it did for other situations not applicable here. See id.; §1383(p)(2). Indeed, in Singletary v. Astrue, 2012 WL 3204071, *8 (W.D.N.Y. 2012) ("Singletary II") - the follow-up case to Singletary v. Astrue, 2008 WL 1323892 (W.D.N.Y. 2008) ("Singletary I"), which was cited by plaintiff - the court concluded that "in cases such as this, where benefits have been terminated and the recipient has made a new application for benefits, the recipient must prove that he or she is disabled, without regard to the prior determination that he or she was disabled". Singletary II, 2012 WL 3204071 at *8.

For these reasons, as I concluded in Maurice Johnson B., where an individual's eligibility for SSI benefits is terminated due to incarceration, such individual is required to make a new application, and the consideration of such application is conducted "without deference to prior findings". 2024 WL 4273350 at *3. As plaintiff does not discuss that case nor Singletary II, much less make any effort to reargue or distinguish them, I see no reason to depart from those rulings here.

**C.    ALJ Soltes fails to explain his departure from Dr. Georgiou's opinion.**

On the merits of this application, plaintiff argues that ALJ Soltes failed to reconcile the RFC with Dr. Georgiou's opinion, despite finding this opinion "somewhat

-7-

persuasive". [7-1] at 12. Dr. Georgiou opined, among other things, that: plaintiff may have difficulties with regular attendance at work; plaintiff seemed to have marked difficulties regulating his emotions, controlling his behavior, and maintaining his temper; and that plaintiff's psychiatric difficulties may significantly interfere with his ability to function on a daily basis. [6] at 396. Plaintiff argues that that ALJ Soltes' RFC fails to account for those limitations without explanation. [7-1] at 12-16. I agree with plaintiff.

To be sure, the ALJ is ultimately responsible for formulating a claimant's RFC. *See* 20 C.F.R. §§404.1546(c), 404.1527(d)(2) and §§416.946(c), 416.927(d)(2); Curry v. Commissioner of Social Security, 855 Fed. App'x 46, 48 (2d Cir. 2021) (Summary Order). In that regard, "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022); *see* Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (Summary Order) (an ALJ's conclusions need not "perfectly correspond with any of the opinions of medical sources cited in his decision" because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole"). The ALJ is permitted to discount medical opinion evidence "if it is inconsistent with other substantial evidence". Schillo, 31 F.4th at 78. The determination of whether evidence is substantial is made on a "case-by-case" basis. Biestek, 587 U.S. at 98.

However, "[w]hile the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' he cannot simply selectively choose evidence in the record that supports his conclusions." Dioguardi v. Commissioner of Social Security, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (citations omitted). According to the Commissioner's own rules, where the ALJ's "RFC assessment conflicts with an opinion from a medical source, the

[ALJ] must explain why the opinion was not adopted." Social Security Ruling 96-8p (1996), 1996 WL 374184, *7; see Jacob K. v. Commissioner of Social Security, 2021 WL 4324379, *2 (W.D.N.Y. 2021); Mary R. v. Commissioner of Social Security, 2022 WL 4376219, *2 (W.D.N.Y. 2022); Raychele K. v. Commissioner of Social Security, 2022 WL 4298258, *3 (W.D.N.Y. 2022). Moreover, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review". Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013).

Here, ALJ Soltes reviewed Dr. Georgiou's medical opinion in depth, and stated that its persuasive value was enhanced by the fact that it was based on a direct examination of plaintiff, supported by the contemporaneous findings, and by Dr. Georgiou's familiarity with SSA policies and requirements. [6] at 32. In contrast, ALJ Soltes said nothing to undercut the persuasiveness of Dr. Georgiou's opinion, yet he proceeded to find his opinion only "somewhat persuasive". Id. In which respects ALJ Soltes found Dr. Georgiou's opinion unpersuasive is left unstated and unclear.

Nevertheless, ALJ Soltes clearly departs from Dr. Georgiou's opinion in his decision. While Dr. Georgiou assessed plaintiff with "marked difficulties" in regulating his emotions, behavior, and temper (id. at 396), ALJ Soltes assessed plaintiff with only "moderate" limitations in the abilities to interact with others and to adapt and manage oneself. Id. at 27.[3] This downgrade in the degree of limitation (see §404.1520a(c)) is not explained, and - given plaintiff's serious criminal history, including convictions for rape and parole violations - the

---

[3] While paragraph B findings are technically distinct from the RFC determination, an ALJ's decision should be read as whole. See, e.g., Justine Michele P. v. Commissioner of Social Security, 2024 WL 411966, *4 (W.D.N.Y. 2024) (referencing the ALJ's paragraph B discussion to explain her RFC determination).

rationale for doing so is hardly self-evident. *See*, *e.g.*, Scott v. Commissioner of Social Security, 2014 WL 4771863, *6 (N.D.N.Y. 2014) ("Plaintiff was convicted of rape, burglary, and sexual assault, which certainly indicates an extreme limitation in the area of social functioning"). More broadly, ALJ Soltes' conclusion that plaintiff is capable of competitive full-time work meaningfully conflicts with Dr. Georgiou's conclusion that plaintiff's psychiatric difficulties may significantly interfere with his ability to function on a daily basis. Id. at 396.

As stated above, an ALJ's decision must adequately explain any departure from the medical opinion evidence (*see* Jacob K., 2021 WL 4324379 at *2), and must also sufficiently set forth his rationale so as to allow the Court to provide meaningful review of his findings. *See* Cichocki, 729 F.3d at 177. "It is not the function of this Court to speculate as to the evidence and legal standards on which the ALJ based [his] decision, nor to supply its own rationale where the ALJ's decision is lacking or unclear." Matthews v. Commissioner of Social Security, 2018 WL 4356495 *4 (W.D.N.Y. 2018). The Commissioner's *post hoc* explanation of ALJ Soltes' reasoning ([8-1] at 20-21) is of no avail. *See* Merkel v. Commissioner of Social Security, 350 F. Supp. 3d 241, 249 (W.D.N.Y. 2018) ("[d]efendant's after-the-fact explanation as to why the ALJ rejected [a medical] opinion cannot serve as a substitute for the ALJ's findings"); Booker v. Astrue, 2011 WL 3735808, *5 (N.D.N.Y. 2011) ("it is an elementary rule that the propriety of agency action must be evaluated on the basis of stated reasons").

For these reasons, remand is required. On remand, the ALJ should fully explain whether and to what extent Dr. Georgiou's opinion should be credited, and should incorporate any credited limitations into plaintiff's RFC. As remand is appropriate on other grounds, I need not consider plaintiff's remaining arguments regarding substantial evidence and lay opinion. [7-1] at 15-21.

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [7] is granted to the extent of remanding this claim to the Commissioner for further proceedings consistent with this Decision and Order, and is otherwise denied, and the Commissioner's motion for judgment on the pleadings [8] is denied.

**SO ORDERED**.

Dated: February 6, 2025

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge